UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | CRIMINAL ACTION NO. |
| Plaintiff, | 3:15-cr-669-MGL |
| vs. | **SENTENCING MEMORANDUM** |
| ROBERTO LUIS MOLINARY, JR., | |
| *Defendant.* | |

### A.     INTRODUCTION

The above-named Defendant, Roberto "Bert" Luis Molinary, Jr. was named in a three count Indictment filed on October 7, 2015. Pursuant to the terms contained in a Plea Agreement, he entered his guilty plea to possession of child pornography, Count 3, on June 1, 2016. The terms of his Plea Agreement include that he not be exposed to a sentence in excess of 120 months. The Pre-Sentence Report prepared after his plea calculates a sentencing range of 210-262 months based on an adjusted offense level of 37, Criminal History Category I. The Defendant, by and through his undersigned attorneys, submit this Sentencing Memorandum petitioning this Court to impose a sentence substantially less than the ten year cap, as provided by the Plea Agreement.

### B.     DEFENDANT'S BACKGROUND

Prior to the acts reflected in the Indictment, Bert led an exemplary life. He has never been convicted, arrested, and was not even the subject of any criminal activity. Despite a

relatively happy childhood, he was sexually abused at the age of 10. While he built a seemingly successful life, the trauma of that sexual abuse was always lurking below the surface.

Bert was a college soccer player and coached men's soccer after leaving his undergraduate studies. He did very well with his career, reaching the position as a head men's soccer coach and an assistant coach for nearly a decade with the highly successful men's soccer team at the University of South Carolina. He was both a leader and a role model in college athletics, enjoying the respect of his peers, athletes, and the community.

Consequently, based on the sentencing factors discussed in detail below, Bert petitions this Court to accept an advisory Guidelines sentence of 60 months or less as an appropriate disposition in this case, serving the Court's sentencing goals as set out in the applicable statute, and the broader goals of a society interested in seeking just results to criminal cases.

C. SENTENCING GUIDELINE RANGE COMPUTATION

A defendant's sentencing guideline range is based on two separate, but equally weighed factors, his criminal history and the true nature of the criminal behavior. Bert's criminal history score is easy to calculate as he has never been in any trouble, resulting in zero criminal history points, thus he is classified in Criminal History Category I.

Bert's guideline offense level is much more complex. He pled guilty to possession of child pornography in violation of Title 18, USC Section 2252A (a)(5)(B) and 2252 A (b)(2). As reflected in the Pre-sentence Investigation Report (PSR), Paragraph 72, the United States Sentencing Guidelines (USSG), Section 2G2.2 for this conviction was applied for a base offense level of 18. As reflected in PSR Paragraphs 73-76 and 80, Bert is assigned five different enhancements raising his base offense level by an additional 14 points to 32. Four of these

enhancements are offense specific which increases his offense level by 12 points and include:  2 points for possession of images of a child under the age of 12, USSG Section 2G2.2(b)(2); 5 points for engaging in a pattern of activity involving the sexual abuse or exploitation of a minor, USSC Section 2G2.2(b)(5); 2 points for the offense involving the use of a computer, USSG Section 2G2.2(b)(6); and 3 points for the offense involving between 150-300 images, USSG Section 2G2.2 (b)(7).

Because he is entitled to a three point reduction for acceptance of responsibility, PSR Paragraphs 83 and 84, the adjusted base offense level is 29. Thus, under the advisory guidelines, with a criminal history category of I and an offense level of 29, his sentencing range is initially determined to be 87-108 months, well below the plea agreement cap of 120 months.

The child pornography guidelines, however, exposes Bert to a harsh sentence based on applying a cross-reference to USSG Section 2G2.1 for having a minor send him a picture, which carries a far greater penalty than simply possessing the image and assigns him a base offense level of 32.  This cross-reference section is increased to an adjusted base offense level of 38, which includes 4 points for images of minors under the age of 12, (USSG 2G2.1 (b)(1)) and 2 points for producing sexually explicit material (USSG 2G.2.1 (b)(6)).  The other adjustment is 2 points added for obstruction of justice during the initial investigation and 3 points subtracted for acceptance of responsibility; thus resulting in a total offense level of 37, with a guideline range of 210-262 months; however considering the 20 year statutory maximum, the guideline imprisonment range is 210-240 months.  As previously stated, the negotiated maximum possible sentence is 120 months.

The above adjusted level of 37, derived from applying Section 2G2.1, contains some of the same specific offense characteristics which were applied under Section 2G2.2 in arriving at a lower guideline range.  As noted above, PSR, Paragraphs 73, 74, 75, and 76 include an increase of 12 points for four particular offense characteristics, including the 2 point enhancement for minors depicted in the images not yet attaining the age of 12, and the 2 points for the use of a computer or interactive computer service.  Likewise, pursuant to Paragraph 77, Section 2G2.1, four points are added, as opposed to two, for the images which contain minors under the age of 12, and 2 points are added pursuant to 2G2.1 (a) (6), which also allows for the enhancement if the defendant used a computer or interactive computer service.

Arguably, the necessity of applying the cross reference is not justified to comply with USSG Sections 1B1.3, Relevant Conduct, and 1B1.5 Interpretation of References to Other Offense Guidelines.  One of the mandates of the 1984 Sentencing Reform Act which gives rise to the Sentencing Guidelines was to ensure "truth in sentencing," so that a convicted offender's sentence was based on the "real" as opposed to the "charged" offense.  The United States Sentencing Commission, created in the 1984 Act states in Chapter One of the USSG, Section 3, The Basic Approach (Policy Statement):  "The list of potentially relevant features of criminal behavior is long; the fact that they can occur in multiple combinations means that the list of possible permutations of factors is virtually endless.  The appropriate relationships among these different factors are exceedingly difficult to establish, for they are often context specific."

Thus in order to fashion a sentence which takes into account what the offender actually committed, the Guidelines allow an offender to be sentenced beyond what he was charged with and convicted of to include other factors of the offenders's behavior, referred to as relevant

conduct. In order to address this "context specific" issue, as stated above, USSG Section 1B1.3 allows the computed sentence to be calculated on the application of a cross reference to another guideline section to weigh in all acts committed by the offender. This procedure is intended to accomplish the goal of honest federal sentences, theoretically taking into account the totality of the offender's behavior. However, in its Commentary to the Relevant Conduct Section, the Commission specified in Application Note 2: "In certain cases, a defendant may be accountable for particular conduct under more than one subsection of this guideline. If a defendant's accountability for particular conduct is established under one provision of this guideline, it is not necessary to review alternative provisions under which such accountability might be established."

Consequently, an interpretation of the above commentary in applying relevant conduct and the use of a cross referenced section, this Court would be justified in electing not to adopt the higher adjusted offense level of 38 as specified in Paragraph 77 of the PSR because under USSG Section 2G2.2 the specific offense characteristics have been "established" without the need of applying the cross referenced Section 2G2.1, alleviating the need to "review alternative provisions." Stated in other terms, the goal of arriving at a sentencing range which considers all of the acts committed by Bert have been accounted for in Section 2G2.2. Thus his "relevant conduct" was included in the initial consideration of the specific offense characteristics, similar to what is provided for in Section 2G2.1.

### D.     STATUTORY SENTENCING FACTORS

A sentencing judge is guided by seven (7) statutory factors in imposing a sentence as outlined in Title 18, USC Section 3553(a): (1) the nature and circumstances of the offense and

the history and characteristics of the defendant; (2) the need for the sentence imposed, which includes four sub parts; (3) the kinds of sentences available; (4) the kinds of sentences and the sentencing range established as provided in two sub-categories; (5) any pertinent policy statement – as stipulated in two sub-categories; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense.  Some of the factors are discussed herein.

    **1.**    **a.**  *Nature and Circumstances of the Offense*

The overriding concern in any child pornography case is the potential for sexual assault.  In fact, it is fair to say all other considerations fade away.  No matter the facts in a case like this, it is the exploitation of a child that warrants the Court's serious consideration.

Mr. Molinary never physically abused a child, nor is there any evidence he planned to or would have if given the opportunity.  It appears the anonymity and lack of physical contact were the central features of Mr. Molinary's actions.  He engaged in online chats with teenage girls, mostly 15-17 years old as he posed as a 16 year boarding school student.  In a webcam exchange with 16 and 17 year old girls they showed him their genital area.  In all of his activity he did not capture any images or photos, and he did not produce or distribute child pornography.  As noted in PSR paragraphs 33 and 34 the images of minor females under the age of 12 were screen shots captured from a web-link.

**b.** *History and Characteristics of the Defendant*

Bert is in a very different position than many federal criminal defendants, even white collar defendants who often have no record, in that he has lived more than just a crime-free life. He has lived the life of a role model to college athletes, and lived it successfully. Historically, Bert has contributed to his community for over 25 years as head men's soccer coach at the prestigious men's college Hampden-Sydney College, in Virginia, and as an assistant coach with the University of South Carolina men's soccer team. As a coach, he was responsible for molding young men both on and off the field of play.

He is divorced from his wife who was engaged in an adulterous relationship with the law enforcement officer who is suspected of initiating this investigation. He lost not just his job, but his life-long profession. As discussed in the preceding paragraph, he is a victim of childhood sexual abuse. While this does not excuse his activity, it mitigates it. Mr. Molinary recognizes he has broken the law and accepts the consequences of his acts. But while seeking to mitigate his actions, Bert prays this Court will exercise its discretion under the advisory guidelines to impose an appropriate sentence.

In an effort to better understand his behavior and how to deal with it, Bert underwent a psychosexual evaluation by Dr. William Burke of Southeastern Assessments, Inc. Two factors revealed by the report were particularly telling. As a young child, Bert was sexually abused by a family friend. He never revealed this information. His test results show Post-Traumatic Stress Disorder, consistent with this abuse. In addition, the testing reveals no chronic sexual deviancy and he has a very low risk level.

Dr. Burke is a well-respected expert and his findings are important in evaluating the lack of future potential danger Mr. Molinary poses, as well as the underlying cause of his criminal activity. This is especially important when the criminal activity is so out of character for the defendant, like it is here. Based on this evaluation there is little to no risk Bert will re-offend. This finding is a powerful vindication for a sentence significantly below the agreed-upon cap.

### 2. The Need for the Sentenced Imposed

#### a. *Seriousness of the Offense, Respect for the Law, and Just Punishment*

In evaluating a case for sentencing purposes, the Court should analyze it in the light of the real danger the law is intended to prevent and punish. Without a doubt, child pornography laws are ultimately in place to fight the sexual abuse and\or exploitation of children. The abuse of children, and those who produce video or photographic evidence of that abuse, is the overriding congressional concern in crafting statutes involving this subject matter.

Punishment for those who are child molesters should not be a proxy for those who possess child pornography. Mr. Molinary never produced, manufactured, nor distributed any child pornography, thus the stated purpose of 3553 § (a)(2)(A) is that the Court determine a just punishment based upon the seriousness of the offense. In the final analysis a sentence of 60 months or less adequately reflects that seriousness.

A sentence that promotes respect for the law will not always be a harsh prison sentence. The Supreme Court has approved a district court's statement that "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *Gall v. United States*, 552 U.S. 38, 54 (2007).

The real conduct and the circumstances of this conviction warrant punishment. Without that acceptance, Mr. Molinary would not have pled guilty and submitted himself to the mercy of this Court. He understands the requirement of punishment – but fair punishment – in this context.

However, a punishment that serves to meet all of these sentencing goals without being greater than necessary is not served by imposing the 120 month cap agreed upon by the parties. Just punishment is often an elusive concept. It is neither defined nor clarified in case law. It does not lend itself easily to a simple description. However, the easiest way to think about just punishment is that, as the law currently exists, it at least involves following each of the statutory sentencing factors discussed here.

Federal sentencing guidelines, and specifically any sentencing guidelines related to child pornography, are by default harsh. Adding an element of just punishment to those sentences often requires a reduced sentence, and certainly does in Mr. Molinary's case.

**b.** *To Afford Adequate Deterrence to Criminal Conduct*

Deterrence is both general and specific. General deterrence insures the sentence will deter others from committing this type of crime. Specific deterrence is intended to deter the defendant from committing any further crimes.

Whether this Honorable Court sentences Mr. Molinary to a term of imprisonment or probation, either option will provide both forms of deterrence. He faces the probability of a term of incarceration and life-time supervision. He will be monitored by the U.S. Probation Office, and placed under numerous and strict sex offender conditions, including monitoring of any computer use. He must register regularly as a sex offender for the rest of his life. As a condition

of sex offender registration in South Carolina, he will be required to provide the South Carolina Law Enforcement Division with all internet accounts and passwords. He will be fingerprinted and photographed every year; and he will be required to inform SLED within 72 hours of making any change in his address. See S.C. Code Ann. § 23-3-400 et. seq.

      **c.**    *To Protect the Public from Further Crimes of the Defendant*

Possession of child pornography has drawn the attention of Congress and the U.S. Sentencing Commission (USSC), as evidenced by the harsh statutory penalties and the advisory guidelines. There are two key concerns associated with child pornography. The first is that involvement with child pornography is a "gateway" for future involvement in contact offenses against children. The second is that the spread and distribution of child pornography normalizes and promotes abusive conduct toward children. Neither of these concerns is evident here.

While people intuitively believe that "lookers" are also "touchers," or will be, that belief is not supported by studies of child pornography offenders. In 2011, the U.S. Probation Office for the Eastern District of New York conducted a study of child pornography offenders for Senior U.S. District Judge Jack B. Weinstein. Their findings, which Judge Weinstein cited in his 400-page opinion in Criminal No.: 09-CR-155 (Eastern District New York, May 16, 2011), address any concerns this Court may have about future dangerousness. *United States v. C.R.*[1] The study found that of the 108 child pornography offenders the U.S. Probation Office for Eastern District of New York had supervised since 1999 "only one known offender convicted of

---

[1] The length of the opinion makes it too unwieldy to attach as an exhibit. The full text of the opinion is located at: http://sentencing.typepad.com/files/us-v-cr-eeinstein-sentencing_memorandum-final.pdf (last accessed December 6, 2016)

a child pornography offense . . . committed a new sexual contact offense while under the supervision of this department . . ." *U.S. v. C.R.*, at 153.

Two studies by the Bureau of Prisons (BOP) on sex offenders have brought both interest and criticism. The first study was presented in an unpublished paper entitled *Self-reported Contact Sex Offenses by participants in the BOP's SOTP Program: Implications for Internet Sex Offenders*, (referred to in this memo as "The Butner Study") This paper was presented in November of 2000, at the 19th annual Conference of the Association for the Treatment of Sexual Abusers in San Diego, California, by Andres E. Hernandez, Psy.D. The gist of The Butner Study is that a high percentage (76%) of child pornography offenders admitted to hands-on child sex abuse that was unknown to law enforcement (taken from 54 child pornography offenders while in the SOTP at FCI Butner, Dr. Hernandez, then the director). This statistic would be startling if it were true, but upon further examination, the sensational results are highly suspect and, very likely, false. No scientifically accepted methodology was used to produce the numbers presented. Nevertheless, Dr. Hernandez privately distributed his study widely, without peer review or any other oversight, and therein bypassed normal opportunities for either scientific validation or refutation by experts in the field of sexual offender diagnosis and treatment. He distributed his study to a limited but very receptive audience, including law enforcement officials and agencies, the Federal Bureau of Investigation (FBI), the Department of Justice (DOJ), and state and federal prosecutors.

The (original) Butner Study took hard criticism from an Iowa federal court in *U.S. v. Johnson*, 588 F.Supp. 2d 997 (Iowa, 2008). In <u>Johnson</u>, Chief Judge Robert W. Pratt stated:

> The Butner Study also suffers from additional methodological flaws. First, the subjects of the Study were not randomly selected from those who only collect

child pornography, representative of the larger population that collects child pornography. Second, the Study employed an unpublished questionnaire. This prevents other independent researchers from verifying whether this questionnaire is reliable and capable of producing results that are accurate and meaningful. Third, the Study relies, in part, on the results from polygraph examinations, which is highly problematic given the unreliability of such tests, especially since no standard for training polygraph experts exists. Fourth, the Study is not peer reviewed, which is the norm in science.[2]

The second study was titled *The 'Butner Study' Redux: A Report of the Incidence of Hands-on Child Victimization by Child Pornography Offenders*, by Dr. Michael L. Bourke, of the U.S. Marshals Service and Dr. Andres Hernandez, Psychology Services, FCI Butner, North Carolina, published in the Journal of Family Violence in 2009. The authors made claims that of "155 sexual offenders in an intensive residential, sex offender-specific treatment program (SOTP) at a medium security federal prison," 85% of those men also confessed to having sexually abused children. *The 'Butner Study' Redux: A Report of the Incidence of Hands-on Child Victimization by Child Pornography Offenders*, Bourke & Hernandez, J. Fam Viol (2009) 24:183-191.

These studies and statistics raise questions about how the sentencing guidelines fail to distinguish great variance among sex offender conduct. The idea that viewing child porn is a gateway to contact offenses against children simply has not borne out. More to the point, there is no credible study that would support a finding that Mr. Molinary might touch a child in an untoward manner. But those same studies have driven a false sense of danger involving cases like this.

---

[2] The Butner Study: A Report on the Fraudulent Execution of the Adam Walsh Act by the Federal Bureau of Prisons; http://www.cfcamerica.org

This information is important in fashioning an appropriate sentence in this case. Protecting the public from further crimes of the defendant is an important sentencing goal. However, it may also warrant a reduced sentence when there is no need to protect the public from the defendant. Mr. Molinary does not pose danger in general, as demonstrated by the criticisms of the only reports to support the idea this crime should be treated differently than any other one. Specifically, Dr. Burke's report demonstrated Mr. Molinary does not tend to pose a danger to society.

       **d.**    *Need for Educational/vocational Training, Medical Care, or Other Corrective Treatment*

Mr. Molinary was evaluated by Dr. Bill Burke, of Southeastern Assessments in December 2015. The assessment concluded that the defendant "did not appear to have chronic sexual interest in deviant sexual stimuli." (PSR ¶ 92.) Moreover, Mr. Molinary was diagnosed as suffering with PTSD, "most likely due to his own sexual abuse victimization" (PSR ¶92). He met the diagnostic criteria for Pedophilia Disorder, based upon the instant charges and his admission to viewing child pornography; however, Dr. Burke believes Mr. Molinary can be safely maintained in the community under specific guidelines.

It appears the best corrective treatment for Mr. Molinary would take place outside of prison walls. Even assuming this Court is inclined to impose a sentence of incarceration, it is urged to still factor the idea a prison sentence is not the best vehicle for accomplishing these sentencing goals. To that end, a sentence well below the cap is more appropriate under the federal sentencing statutes.

### 3. 4. & 5.     The Kinds of Sentences Available; the Sentencing Range Established; and Policy Statements

The presentence report at ¶ 104 correctly identifies the statutory penalty as 20 years, while at ¶ 105 it calculates the advisory guideline range to be 210-240. The parties have agreed to a sentence of 'no more than 120 months.' As this Court is aware, sentencing judges throughout the United States have been struggling with balancing the scope of each defendant's criminal culpability in possessing child pornography with the risk of a defendant sexually abusing a child. The sentencing guidelines, in this context, have not, unfortunately, provided the courts with any empirically based guidance. Indeed, the research cited herein suggests otherwise. The child pornography guidelines suffer many of the same flaws as the drug guidelines. The average possessor of child pornography does not chart within the "heartland" of the statutory range and the case at bar presents this very fact. This reality is due to guideline enhancements that apply in virtually all cases. The following statistics are taken from a publication by the U.S. Sentencing Commission, *Use of Guidelines and Specific Offense Characteristics: Fiscal Year 2015, at 45*. For example, the "use of computer" enhancement, under § 2G2.2(b)(6), is applied in 94.4% of all cases sentenced. This enhancement does not "distinguish between 'serious commercial distributors' . . . from more run-of-the mill users." *U.S. v. Dorvee*, 604 F.3d 84, 95-96 (2d Cir. 2010)(amended and superseded by 616 F.3d 174 (2d Cir. 2010)). The number of images enhancement under § 2G2.2(b)(7)(D) does not fare any better - applying in 76.0% of cases. As Judge Adelman observed in *United States v. Diaz*, "because of the nature of internet and computer use, offenders, often unwittingly, access large numbers of images *en masse*." *United States v. Diaz*, 720 F.Supp.2d 1039, 1042 (E.D. Wisc. 2010). 94.5% of all cases involved pictures of pre-pubescent children and the enhancement at

§ 2G2.2(b)(2) was applied. Ironically, a possessor of child pornography can often have a higher guideline range than if that defendant had actually abused a child. [3]

In *U.S. v. Dorvee*, the Second Circuit noted that the child pornography guidelines were fundamentally different from many of the guidelines because "the Commission did not use [an empirical approach] in formulating the guidelines for child pornography." The Second Circuit characterized the child pornography guidelines as "fundamentally incompatible" with 18 U.S.C. § 3553(a), because "adherence to the guidelines results in virtually no distinction between the sentences for [the run of the mill defendant], and the sentences for the most dangerous offenders who, for example, distribute child pornography for pecuniary gain and who fall in higher criminal history categories." 616 F.3d at 184. Finally, the Second Circuit strongly recommended district courts "take seriously the broad discretion they possess in fashioning sentences under § 2G2.2 – ones that can range from non-custodial sentences to the statutory maximum – bearing in mind that they are dealing with an eccentric guideline of highly unusual provenance which, unless carefully applied, can easily generate unreasonable results." 616 F.3d at 188.[4]

---

[3] The U.S. Sentencing Guidelines call for a base offense level of 38 when a person is convicted of aggravated sexual abuse of a child under the age of 12; U.S.S.G. § 2A3.1. Under § 2G2.2, however, a possessor of child pornography may find that the adjusted offense level can quickly rise to 40 without *any* contact with a child.

[4] See also U.S. v. Grober, 595 F.Supp.2d 382 (D.N.J. 2008) and the cases cited therein, as well as Troy Stabenow, *Deconstructing the Myth of Careful Study: A Primer on the Flawed Progression of the Child Pornography Guidelines* (June 10, 2008), http://www.fd.org/pdf_lib/Deconstructing the Child Pornography Guidelines

### 6. The Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records who Have Been Found Guilty of Similar Conduct

This becomes quite clear in Mr. Molinary's case, especially when the cross-reference is applied. His offense level quickly reached 40 with enhancements. Compared to base offense levels provided by the USSG for other offenses, Bert's base offense level of 32 pursuant to Section 2G2.1, with the applications of two enhancements increasing the level 40 is simply out of whack with his offense conduct. For instance, the base offense level for kidnaping is **32** (2A4.1) ; for second degree murder **38** (2A1.2); for voluntary manslaughter 29 (2A1.3); for conspiracy to commit murder\attempted murder, **33** (2A1.5); assault with the intent to commit murder, **33** (2A2.1); for larceny with a loss of over $550,000,000.00, **30** (2B1.1) for robbery **20** (2B3.1) and for a drug offense with the amount exceeding 90 kilograms of heroin or 450 kilograms of cocaine, **38** (2D1.1). In sex offender conduct in which a victim was physically harmed such as criminal sexual abuse the base offense level is **38** (2A3.1), for criminal sexual abuse of a minor **18** (2A.3.2), criminal sexual abuse of a ward **14** (2A3.4) and for abusive sexual contact **20** (2A3.4). As the Court knows, the advisory guidelines only go to 43, which is a life sentence. Mr. Molinary's case was just levels below the most serious imaginable guidelines sentence in the federal criminal justice system.

The guidelines became advisory for this exact reason. When the formulaic application of the advisory sentencing guidelines becomes harsh for the sake of being harsh, rather than in the service of the statutory sentencing factors, the Court retains judicial discretion. That discretion is in recognition of the logic behind linking a sentence to real conduct and just punishment. When

the guidelines fail to do that, they should be disregarded and the Court should impose a proper sentence.

## CONCLUSION

The advisory guidelines for child pornography offenses are deeply flawed and not based on any empirical evidence. Incarcerating Mr. Molinary for 10 years will cost the United States $319,760.00, based upon figures provided at PSR ¶ 116. Mr. Molinary has fully complied with the conditions of his bond, while under supervision of the U.S. Probation Office. The defendant has never abused a child and evidence suggests he will not in the future. The guidelines' treatment of the unique set of facts of this case are overly harsh and depart from the federal sentencing objectives.

The mandate of 18 U.S.C. § 3553 that the Court "impose a sentence sufficient, but not greater than necessary" to achieve the sentencing factors outlined within that statute, requires the Court to thoughtfully consider the foregoing analysis. Defendant respectfully urges the Court to exercise its discretion and sentence him substantially below 60 months.

*[Continued on next page]*

By:   s/ Joshua Snow Kendrick
Joshua Snow Kendrick (Fed ID 9037)
Christopher S. Leonard (Fed ID 10998)
P.O. Box 6938
Greenville, SC 29606
(864) 760-4000
Josh@KendrickLeonard.com

s/ A. Peter Shahid, Jr.
A. Peter Shahid, Jr. (Fed ID 5286)
89 Broad Street
Charleston, SC 29401
(843) 853-4500
Peter@ShahidLawOffice.com

J. Marcus Whitlark (Fed ID 1413)
1522 Lady Street
Columbia, SC 29201
(803) 429-5440
JMWhitlark@yahoo.com

January ___, 2017

Greenville, South Carolina